523 A.2d 719

**SUPERVISORS OF LEWIS TOWNSHIP, Appellees,**

v.

**EMPLOYERS MUTUAL CASUALTY COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued May 14, 1986.

Decided March 30, 1987.

244

James W. Hennessey, Norristown, for appellant.

Richard A. Gahr, Williamsport, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Appellant Employers Mutual Casualty Company appeals from the order of the Commonwealth Court affirming the decision of the Lycoming County Court of Common Pleas, directing the Appellant to provide insurance coverage for losses arising out of surcharges imposed upon former township supervisors, pursuant to liability policies issued to Lewis Township.

As a result of actions taken in 1978 by former township supervisors, Donald Chute, Edward Deljanovan, and James Remick, involving the construction of a weigh station, the auditors surcharged the supervisors in the amount of $801.37 in the 1978 annual audit and financial report. No appeal was taken and judgment was entered on July 2,

1979. In March, 1980, the auditors again imposed a surcharge upon Chute and Deljanovan in the 1979 audit and financial report in the amount of $15,278.10. On appeal to the Court of Common Pleas, the surcharge was affirmed in the amount of $10,833.66. Judgment was entered in that amount on July 1, 1981.

On September 28, 1981, a declaratory judgment action was filed on behalf of Lewis Township by Appellees Indie E. Snyder, Richard Johnston, James Remick, Ethan Messinger, and Veryl Simmons, the township supervisors, seeking coverage for the surcharged amounts under insurance policies issued by the Appellant to the township. The Appellant denied coverage, asserting that the coverage of surcharges is contrary to public policy and is statutorily proscribed by Section 702(XIII) of The Second Class Township Code, Act of May 1, 1933, P.L. 103, as amended, 53 P.S. § 65713. The trial court concluded that the Appellant was required to provide coverage for the surcharges. Judgment was entered against the Appellant in the amount of $11,-635.03, and the Appellant was ordered to reimburse the township for reasonable attorney's fees. The Commonwealth Court affirmed. 83 Pa.Cmwlth. 419, 477 A.2d 607.

The question presented is whether the insurance policies issued by the Appellant provided coverage to the township for the surcharges imposed upon the former township supervisors. We conclude that the insurance policies did not encompass losses sustained by the township as a result of surcharges and, therefore, reverse.

The insurance policies, which were effective for successive one-year periods from March 23, 1978 through March 23, 1982, provided for legal liability coverage and loss reimbursement. The named insured was defined in Subsection IV.A. of the policies as "... the Municipality named in the Declarations and includes the Municipal Council, each Council member, and any other duly elected or appointed official of the Municipality." Each of the policies provided inter alia:

I. A. The Company will pay on behalf of the Insured, individually or collectively, loss which the Insured shall become legally obligated to pay because of a Wrongful Act occurring during the policy period; ...

IV. D. Wrongful Act means any and all of the following: actual or alleged errors, mis-statement or misleading statement, act or omission or neglect or breach of duty by the Insured, individually or collectively, in the discharge of Municipal duties, or any matter claimed against them solely by reason of being or having been the Insured during the policy period.

E. Loss means any amount which an Insured is legally obligated to pay or for which the Municipality may be required or permitted by law to pay as indemnity to an Insured, for a claim or claims made against the Insured, individually or collectively, for which insurance is provided herein except, however, such subject of loss shall not include fines imposed by law.

The policies also provided that, "[t]erms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes."

The Appellant contends that the township lacks the authority to obtain insurance coverage for surcharges assessed against its supervisors, citing Section 702(XIII) of the The Second Class Township Code, 53 P.S. § 65713. This section provides, in relevant part, that a township is authorized

to make contracts with any insurance company, so authorized, insuring any public liability of the township, including insurance on every township officer, official, and employe for liability arising from errors and omissions in the performance of their duties in the course of their employment, except that liability of elected or appointed officials or officers for surcharge in accordance with law shall not be affected hereby....

Because each policy provided that its terms were to conform to the statutes of the Commonwealth wherever a

conflict arose, the Appellant posits that coverage for surcharges is precluded despite the policies' definition of "wrongful act."

The Commonwealth Court rejected this argument, concluding that Section 702(XIII) of the Code was repealed by Section 802(b) of the Political Subdivision Tort Claims Act (Act), Act of November 26, 1978, P.L. 1399, 53 P.S. § 5311.802(b), insofar as the Code provision was inconsistent with the Act.[1] The Commonwealth Court determined that the exception for the liability of township officials for surcharges set forth in the Code provision was inconsistent with § 703 of the Act, 53 P.S. § 5311.703, which provided [2]:

> A political subdivision shall have the authority to purchase insurance on itself or its employees for *any* liability arising from the performance of their duties within the scope of their employment. [Emphasis supplied.]

To the extent that the Act would permit a political subdivision to purchase insurance on itself or its employees for any liability, the Code provision's limitation on the township's authority to seek insurance for the liability of its officials for surcharges was found to be inconsistent with the Act and repealed thereby.

We reject the Appellant's argument that the Code provision and Section 703 of the Act are not inconsistent because there is no specific reference to insurance for surcharges in the Act. Neither the Act nor the Code provision elucidated upon the specific conduct of an official for which liability insurance could be obtained. Both defined the authority to purchase liability insurance in terms of liability arising from the performance of an official's duties in the course of his employment. The Code provision, however, contained an exception for surcharges. The Act removed that particular limitation on the authority of political subdivisions by grant-

1. Section 802(b) of the Act was subsequently repealed by Section 333 of the JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693, 42 P.S. § 20043.

2. Section 703 of the Act was repealed also by Section 333 of the JARA Continuation Act of 1980, supra, but has been substantially re-enacted by Section 8564(a) of the Judicial Code, 42 Pa.C.S. § 8564(a).

ing authority to purchase insurance for any liability arising from the performance of officials' duties within the scope of their employment.

■ While we agree with the conclusion drawn by the Commonwealth Court that the exception for surcharges was repealed by the Act, we do not find this conclusion to be dispositive of the issue of whether the township's losses attributable to surcharged officials were insured by the Appellant.

■ Both the township and its officials were named insureds under the policies which were issued. By the terms of the policies, the Appellant was required to pay on behalf of an insured losses which the insured became legally obligated to pay because of a wrongful act occurring during the policy period or an amount which the municipality was required or permitted by law to pay as indemnity to an insured. For the claim made in this case, it is the township official who is responsible for the surcharged amounts. A surcharge imposed upon a township official is neither an amount which the township is legally obligated to pay nor an amount which it would be required to pay as indemnity to an insured. This is the extent of the coverage provided by the policy. The township officials who were surcharged may have been proper claimants under the policy, but clearly the township is not. Simply stated, the township is not the proper party to sue under the terms of this policy. To find coverage for the township's claim, the language of the policy would have to be rewritten to extend coverage to amounts which the township was *not* legally obligated to pay. This was not the agreement between the parties. While a township may obtain insurance coverage for losses it sustains as a result of an official's actions resulting in a surcharge, this was not what was purchased by the township in this case. Accordingly, we must reverse the decision of the Commonwealth Court.

■ Proceeding from the erroneous premise that it could recover surcharged amounts under these policies, the township argues that the insurer could recover the payment of a claim for the amount surcharged from the surcharged officials. This would be an impossibility because it is the surcharged official only who is the insured for the purposes of this claim. Since the insurer would be contractually bound to pay the amount surcharged on behalf of the surcharged official, no right of subrogation could exist. The policies were written, inter alia, to protect an official who is liable for the amount surcharged. It would be an absurd result that an official could be insured for his liability due to a surcharge, but have to reimburse his insurer for that very liability against which he sought to insure.

While we dismiss the Appellant's assertion that a township lacks the authority to purchase coverage for surcharges, we must agree in part with its alternate contention that insurability of wrongful acts on the part of township officials which result in surcharges is contrary to public policy.

■ Surcharges may arise out of either the negligent conduct or the willful or fraudulent misconduct of an official. We hold that where the conduct is negligent, a township may seek insurance coverage for the loss occasioned to either the township or its officials. But where the surcharge arises from the willful or fraudulent misconduct of an official, the township may insure only its loss and may not purchase coverage for the official. To hold otherwise would be contrary to the language of 42 Pa.C.S. § 8564, and its precursor Section 703 of the Political Subdivision Tort Claims Act, authorizing a township to purchase insurance on itself or its employees for any liability arising from the performance of their duties *within the scope of their employment.* Surcharges arising out of an official's willful or fraudulent misconduct necessarily are liabilities which arise outside of the scope of his employment.

It would also be violative of public policy to permit a township to insure against the willful or fraudulent misconduct of its officials. In those instances, the possibility of a surcharge is intended to act as a disincentive by imposing personal liability upon the official. If a township would be authorized to insure an official from personal liability under such circumstances, no disincentive would exist. An official could act without personal financial repercussions all at a cost to the taxpayers.

The limitation in 42 Pa.C.S. § 8564 on the authority of a local agency to procure insurance for its employees for liability arising from conduct within the scope of their employment strikes a balance between two competing public interests. The public interest in having competent individuals seek public office without an inordinate fear that negligent conduct resulting in a surcharge would expose them to uninsurable personal liability is satisfied, as is the public interest in providing restraint on officials' actions. No evidence was introduced in this record which would indicate that the township officials' actions were willful or fraudulent misconduct, but the terms of the policies do not encompass claims by the township for surcharged amounts.

The order of the Commonwealth Court is hereby reversed.

PAPADAKOS, J., filed a dissenting opinion.

PAPADAKOS, Justice, dissenting.

I am obliged to dissent from my brethren in this decision because of my fundamental disagreement with their characterization of the issue. While I have no objection to the legal principles enunciated by the Majority, I take serious exception to their factual conclusion that the Township suffered no insurable loss and, therefore, must be denied recovery under the insurance policy.

The fatal flaw in the Majority's reasoning is their insistence that the Township "suffered losses arising out of

surcharges imposed upon former township supervisors." In reality, of course, the imposition of surcharges was derived from the Township's monetary loss in overpayments to the contractor. The surcharges thereby constituted a derivative action which was predicated upon the original financial loss suffered by the Township and which is fully compensable under the law. Had the Township not sustained the loss, there would have been no surcharge. I greatly fear, in short, that my colleagues have placed the cart before the horse. They wave a magic wand and make the predicate disappear into thin air. As a matter of fact, of course, the existence of the original monetary loss will not go away for the obvious reason that it is the essential reality of this case.

The Township purchased insurance to cover those amounts which it was legally obligated to pay. That obligation specifically must encompass the original monetary loss, and in this respect the Majority simply is refusing to define the issue properly. I read the terms of the insurance contract in a light which would cover this particular claim.

Furthermore, the Majority fails to distinguish between the Township and its officials as separate and distinct legal entities. There is no reason why the Township should not be permitted to secure insurance coverage against the initial legal payments to contractors and allow the insurer to be surcharged against the officials.

Finally, I also take exception to the extraneous inferences employed by the Majority in its analysis. While it is true that they conclude in this case that there is no evidence of willful or fraudulent misconduct, I cannot understand why they found it necessary to juxtapose within their opinion a lengthy legal delineation of the consequences which could attend such behavior. Civic pride induces our good citizens to conduct the affairs of their own governments in a virtuous manner. Gratuitous implications leading to guilt by association are unwarranted on this record.