Charity J. HUGHES, Appellant,

v.

SEVEN SPRINGS FARM, INC., t/d/b/a
Seven Springs Mountain Resort,
Appellee.

Superior Court of Pennsylvania.

Argued Oct. 20, 1998.
Filed Feb. 25, 1999.
Reargument Denied May 4, 1999.

Anne N. John, Uniontown, for appellant.

Anthony W. Hinkle, Pittsburgh, for appellee.

Before DEL SOLE and JOHNSON, JJ., and CIRILLO, President Judge Emeritus.

DEL SOLE, J.:

¶ 1 This is an appeal from an order of summary judgment entered in favor of defendant. Appellant instituted an action seeking to recover damages for injuries she allegedly suffered when an unidentified skier collided with her at Appellee's ski resort facility. The trial court concluded that Appellant assumed the inherent risk of the sport and signed a release agreement, which bars the present action. We reverse.

¶ 2 Appellant traveled with her high school ski club to the Seven Springs resort to ski. With a pre-paid rental ticket she obtained ski equipment after executing a Release Agreement. She commenced skiing and traveled through two runs when, while she was at the base of a slope in front of the ski lodge area, she was struck by an errant unidentified skier. Appellant fell backward which, she claims, caused her injuries.

¶ 3 Appellant argues the trial court erred in entering summary judgment on these facts. She claims that because she had completed a run and was at the bottom of the slope where any patron of the resort could be, it can not be said that she assumed the risk of her injury. She also maintains the release agreement does not bar her action.

¶ 4 We begin by addressing Appellant's assertion that issues of material fact remain in this case, therefore it was error to grant summary judgment. The trial court ruled that Appellant was aware of the risks involved in skiing. It found "unavailing" her claim that she was not actually skiing at the time of the accident. The court viewed the fact that she had just finished a run down the hill and was still on skis, about to proceed to another lift, as confirmation of the fact that she was "skiing" when the accident occurred.

¶ 5 We disagree and find there is a question here for the jury to resolve. Appellant was a business invitee of the ski resort. "A business invitee is a person who is invited to enter or remain on the land of another for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa.Super.1998). The duty owed to a business invitee by the landowner is the highest duty owed to any entrant upon land. *Crotty v. Reading Industries*, 237 Pa.Super. 1, 345 A.2d 259 (1975). In this situation the landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care. *Id.*

¶ 6 Appellee counters by suggesting that the "no-duty" rule applicable to amusement facility operators is applicable in this case. This rule recognizes that there are certain inherent risks assumed by spectators or patrons when viewing or participating in a sporting event or other amusement activity against which the amusement facility has no duty to protect. *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525 (1988). In accordance with this rule courts have long refused to grant recovery for injuries sustained by an amusement patron which were caused by a risk inherent in the activity in question. *Telega v. Security Bureau*, 719 A.2d 372 (Pa.Super.1998).

¶ 7 However as noted by this Court in *Telega*, even in a place of amusement, not every risk is reasonably expected. *Id.* Rather the "no-duty" rule applies only to occurrences which are inherent in the activity and which are considered common, frequent and expected. *Id.* Ordinary negligence rules apply to all other risks present. *Id.* at 376.

¶ 8 In this case the question thus becomes whether on the facts presented Appellant's injuries were caused by an occurrence which was common and inherent. Appellee asserts that falling and colliding with other skiers are inherent risks in the recreational sport of downhill snow skiing. However, Appellant claims she was not skiing at the time of the collision. She argues that she had completed her ski run and was at the bottom of the hill where any patron of the ski resort might be when she was hit by the errant

skier. Therefore, she asserts there was an issue of material fact as to whether such danger of being hit by skier while standing at the base of the hill, was known and common.

¶ 9 On the state of the record before us, considering a motion for summary judgment, we must give Appellant the benefit of all reasonable inferences to be drawn from the pleaded facts. *Curry v. Estate of Thompson*, 332 Pa.Super. 364, 481 A.2d 658 (1984). Undertaking such review we are not prepared to hold as a matter of law that Appellant's injuries were caused by an occurrence which was an inherent risk of the sport of snow skiing. While such accidents are to be expected while engaged in skiing, we conclude that a jury must decide whether this type of accident is common and expected to one in Appellant's position.

¶ 10 We further note as recognized in *Berman v. Radnor* 374 Pa.Super. 118, 542 A.2d 525, 530 (1988), the no-duty rule is a separate and distinct concept from the defense of assumption of the risk. "Assumption of the risk is an affirmative defense, Restatement of Torts (Second) § 496G to be pleaded and proved by the defendant, rather than as part of plaintiff's prima facie case." *Id.* at 532. Although Pennsylvania has generally abolished the defense of contributory negligence in favor of comparative negligence in 42 Pa.C.S.A. (a) and (b), it has by exception preserved assumption of the risk in relation to downhill skiing in the Pennsylvania Skier's Responsibility Act, 42 Pa.C.S.A. § 7102(c). It provides:

(c) Downhill Skiing.—

(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of non-residents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (b).

¶ 11 In *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (1983), the court was asked to interpret the Act to decide whether the appellant had assumed the risk of his ski injuries. The court noted that in order to establish that the plaintiff assumed the risk, the defendant must prove that the plaintiff knew of the risk, appreciated its character and voluntarily chose to accept it. *Id.* at 1008. Factors such as age, lack of information, experience, intelligence, understanding, and voluntariness were all looked to as matters which must be considered. *Id.* at 1009. The court noted that these are usually question of fact for a jury, but ruled that there was nothing for a fact-finder to consider in this case where the plaintiff's own testimony demonstrated that he subjectively appreciated the risk and voluntarily chose to confront them. *Id.* The plaintiff, an experienced skier was injured as he struck a pole and snow making equipment as he attempted to descend a steep ski slope. The court remarked that the plaintiff knew the slope was marked "Most Difficult," that people ahead of him were having trouble negotiating the icy slope and that unprotected poles lined the center of the hill, yet he chose to descend the slope rather than side-step uphill to a gentler slope. *Id.*

¶ 12 The instant case is markedly different from *Smith*. It can not be readily said that Appellant encountered a known risk when she was struck by a wayward skier at the base of the slope, unlike the plaintiff in *Smith* who was injured after choosing to descend an icy slope. It cannot be determined on the record before us that Appellant's experience or knowledge caused her to recognize the risk of being hit by an errant skier while she was located at the base of the slope and that she willingly accepted that risk. Furthermore, it is questionable whether the Skier's Responsibility Act would even be applicable in this case. The Act covers "downhill skiing" and notes that there are inherent risks in the sport of "downhill skiing." Appellant claims she was not engaged in downhill skiing while she was injured. If the jury accepts this position, that Appellant was not "downhill skiing" at the time of the accident, then the Act would not apply. This

is, however, a matter appropriately left for a jury to resolve.

¶ 13  We turn now to Appellant's claim that the court erred in finding that she released Appellee of liability. The court reached this conclusion based upon Appellant's signature on a Release Agreement she signed in relation to her rental of ski equipment. In pertinent part that agreement provides:

> I agree to hold harmless and indemnify the ski shop and its owners, agents and employees for any loss or damage, including any that results from claims for personal injury or property damage related to the use of this equipment, except reasonable wear and tear.
>
> . . .
>
> I understand that there are inherent and other risks involved in the sport for which this equipment is to be used, snow skiing, that injuries are a common and ordinary occurrence of the sport, and that injuries including knee injuries can occur regardless of the use of a ski boot binding system, and I freely assume those risks.
>
> . . .
>
> I hereby release the ski shop and its owners, agents and employees form any and all liability for damage and injury to myself or to any person or property resulting from negligence, installation, maintenance, the selection, adjustment and use of this equipment, accepting myself the full responsibility for any and all such damage or injury which may result.

¶ 14  Appellant maintains, and we agree, that this release pertains only to the rental of ski equipment and injuries related to that rental. It is not a release of the resort facility related to the use of the facility or any accident which may occur on the premises. A reading of the language of the release makes it evident that it pertained to injuries related to the rental of ski equipment. Thus, the trial court erred in ruling that Appellant's signature on the release agreement barred the present action. Because we find the agreement has no relevance to the instant matter, we need not reach Appellant's claim that the ski equip-

ment rental agreement was a contract of adhesion.

¶ 15  Judgment reversed. Case remanded for new trial. Jurisdiction relinquished.

¶ 16  CIRILLO, President Judge Emeritus, files a dissenting opinion.

CIRILLO, President Judge Emeritus, dissenting:

¶ 1  Because I believe that Appellant assumed the risk and, therefore, Appellee should be absolved of any and all duties and resultant liability to Appellant, I respectfully dissent.

¶ 2  Appellant, a senior class member of her high school ski club, traveled to Appellee's ski resort on January 29, 1992 to enjoy an afternoon of skiing. Appellant had been skiing for more than one year prior to this trip and considered herself an intermediate-level skier. She had, in fact, skied at Appellee's resort for two seasons. Appellant had paid for a lift ticket and a ski rental equipment ticket in advance. Prior to receiving her ski equipment, Appellant signed an agreement releasing the ski shop from any and all liability for damage and injuries sustained as a result of her use of the equipment.

¶ 3  Appellant commenced skiing the slopes, traveling through at least one run before she was knocked over by an unidentified, fellow skier. The collision occurred as Appellant was finishing a run and entering a common area at the base of the ski slope into which skiers emptied. Appellant filed suit against Appellee for her injuries sustained as a result of the collision, claiming that Appellee was negligent in its supervision and control of skiers on its slope and in failing to warn her of the danger she experienced.

¶ 4  The trial court entered summary judgment in favor of Appellee, finding that Appellee was absolved from all liabilities because Appellant assumed the risk of the collision. In the Pennsylvania's Skier's Responsibility Act, 42 Pa.C.S.A. § 7102(c), upon which the trial court relied, this Commonwealth preserved the otherwise abolished doctrinal defense of assumption of the risk. Section 7102 states:

**Downhill skiing.—**

(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of non-residents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

(2) The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (b) [subsections relating to comparative negligence and contribution among defendants].

42 Pa.C.S.A. § 7102(c).

¶ 5   Assumption of the risk is an affirmative defense that must be proven by a defendant. "Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of risk." *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042, 1049 (1983).

¶ 6   It is clear that Appellant assumed the risk at Appellee's ski resort and, therefore, that summary judgment was properly entered, as there is no issue of material fact with regard to Appellee's duty or potential liability.   Contrary to the majority, I am convinced that the term "downhill skiing" used in section 7012(c) applies to all activities related to the sport.   Accordingly, it is an inherent part of downhill skiing that one empties into a basin at the bottom of a ski slope with the intent to turn around and approach the ski lift and return to the top of the slope to complete another run.   Logically and reasonably, then, an experienced skier such as Appellant must have expected that other fellow skiers would be emptying into the same basin at the bottom of the mountain and could potentially collide with her.

¶ 7   As additional support for the fact that Appellant voluntarily assumed the risk, Appellant's ski lift ticket which she had pre-purchased and wore on her person both before and during the collision states, in part:

There are inherent and other risks in the sport of skiing.   These risks include, but are not limited to . . . **collisions with . . . other skiers . . . . If you do not agree that the injuries, sometimes serious, resulting from these risks are not the responsibility of Seven Springs Farm, Inc. [Appellee] and do not agree that you voluntarily assume the risk of these injuries while participating in this sport, do not purchase a ticket.** [Emphasis added].

Furthermore, the National Ski Association, recognizing the risk of downhill skiing, has signs printed indicating a "Skier's Responsibility Code." Appellant admitted that one such sign was posted at Appellee's ski resort and that she, in fact, had reviewed the Code and was aware of its warnings which stated:

There are elements of risk in skiing that common sense and personal awareness can help reduce.

1.   Ski under control and in such a manner that you can stop or avoid other Skiers or objects.

2.   When skiing downhill or overtaking another skier, you must avoid the skier below you.

3.   You must not stop where you obstruct a trail or are not visible from above.

4.   When entering a trail or starting downhill, yield to other skiers.

5.   All skiers shall use devices to prevent runaway skis.

6.   You shall keep off closed trail and posted areas and observe all posted signs.

¶ 8   Based upon all the facts of record, I wholeheartedly disagree with the majority's conclusion that there is an issue of material fact with regard to whether Appellant was engaged in "downhill skiing" at the time of the accident and, therefore, whether the assumption of the risk doctrine under section 7102(c) applies to the instant case.   To me there is no issue;   reasonable persons could not differ as to the conclusion that Appellant subjectively appreciated the risk she encountered and voluntarily chose to confront it. *See Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (1983);   *Burke v. Ski America, Inc.*, 940 F.2d 95 (4 th Cir.1991);   *Kotovsky v.*

*Ski Liberty Operating Corp.*, 412 Pa.Super. 442, 603 A.2d 663 (1992).